IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ABDUL WAHEED,                            *

    Plaintiff,                          *

v.                                       *        Civil Action No. GLR-20-1931

STATE OF MARYLAND, et al.,               *

    Defendants.                         *
                   ***

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Defendant Maryland State Retirement Agency's ("MSRA") Motion to Dismiss (ECF No. 12) and Defendants the State of Maryland Office of the Comptroller (the "Comptroller"), the Maryland Workers' Compensation Commission ("WCC"), Maryland Office of Administrative Hearings ("OAH"), and Administrative Law Judges Deborah Richardson, Geraldine Klauber, and James Murray's (collectively "Judge Defendants") Motion to Dismiss (ECF No. 14). The Motions are ripe for disposition and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons discussed below, the Court will grant the Motions.

## I.   BACKGROUND

### A.   <u>Factual Background</u>[1]

Plaintiff Abdul Waheed is a naturalized American citizen and practicing Muslim who was born in Pakistan. (Restatement Compl. per Ct. Req. ["Restmt."] at 2, ECF No. 4-

---

[1] Unless otherwise noted, the Court takes the following facts from Waheed's Amended Complaint (ECF No. 4) and its attached "Restatement of Complaint Per Court

1). Waheed worked in the information technology department for the Comptroller for twenty years with no blemishes on his work record. (Id.). Over the course of some unspecified period, unnamed management personnel at the Comptroller assigned Waheed "too great an amount of work to complete." (Id.). The Comptroller also failed to properly train him, but tested him on the basis of training he should have received and "held [him] accountable" for the knowledge that training should have provided. (Id.). These actions caused Waheed to experience stress, which led to anxiety and cognitive disorders. (Id.). Waheed alleges that he was "hit" with unspecified "repeated punitive acts" for things over which he had no control, then terminated. (Id.). Waheed asserts that the Comptroller's treatment of him was caused by discriminatory animus due to his religion and national origin, but offers no factual support for this assertion. (Am. Compl. at 6, ECF No. 4).

Following his termination, Waheed "filed appeals" with OAH concerning the actions taken by the Comptroller. (Restmt. at 2). Waheed asserts that OAH failed to provide him an "unbiased, proper hearing predicated upon state and federal law" and that Judge Defendants failed to abide by "the oaths of office they are held to under the Constitution." (Id.). Specifically, he avers that Judges Richardson and Murray found that Waheed was not credible, but based these findings on Waheed's "rambling," which was a symptom of his disability. (Id. at 3). He further asserts that Judge Klauber wrongly granted a motion filed by the State that was purportedly "predicated upon a lie." (Id.). Waheed also generally alleges that Judge Defendants were disrespectful toward him and implies that their

---

Request" (ECF No. 4-1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

treatment of him may be due in part to discriminatory animus on the basis of his national origin or his disability. (<u>Id.</u>; Am. Compl. at 6).

Waheed also alleges that as an employee of the State of Maryland, he "was forced to join into the Maryland State [Retirement] System and pay a percentage of his salary into the system, with the understanding that he would receive some type of pension in the future once he became vested." (Restmt. at 3). Waheed asserts that this constituted a "contractual arrangement" through which he would receive pension under the following circumstances: (a) "being in the system" and working for more than thirty years; (b) "being vested" and working less than thirty years but turning sixty-two years old; or (c) "being vested" and becoming disabled and unable to work. (<u>Id.</u>). Waheed states that the Comptroller's actions, described above, injured him and rendered him disabled. (<u>Id.</u>). He explains that although the federal government provided him with Social Security Disability Insurance ("SSDI"), MSRA continually denied him access to disability benefits on the basis that "he may not be permanently disabled." (<u>Id.</u> at 4). Waheed further asserts that MSRA mishandled his case by attempting to force him to submit to an unnecessary examination and evaluation. (<u>Id.</u>). Waheed implies that MSRA's treatment of him was caused by discriminatory animus due to his religion, national origin, or disability, but offers no factual support for this assertion. (Am. Compl. at 6).

The facts recounted above represent substantially all the factual allegations presented in the Amended Complaint. The balance of the Amended Complaint is made up of legal conclusions and argument.

**B.**   **Procedural History**

Waheed filed this lawsuit against the State of Maryland, the Comptroller, OAH, MSRA, WCC, and Judge Defendants on June 29, 2020. (ECF No. 1). On July 2, 2020, the Court issued an Order directing Waheed to supplement his Complaint and to either file a Motion to Proceed in Forma Pauperis or to pay the full filing fee. (ECF No. 2).

Waheed filed an Amended Complaint on July 24, 2020. (ECF No. 4). Although the specific claims Waheed seeks to assert in the Complaint are difficult to decipher, he appears to allege the following claims: disability, religious, race, and/or national origin discrimination against all Defendants, presumably in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution via 42 U.S.C. § 1983 (Count I); violation of one or more unspecified provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq. ("ADA") (Count II); violation of the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution via 42 U.S.C. § 1983 (Count III); honest services fraud in violation of 18 U.S.C. § 1346 (Count IV); and an unspecified contractual or tort claim relating to his deprivation of disability benefits (Count V).[2] (Am. Compl. at 4). Waheed seeks injunctive relief, payment of past and future lost wages, payment of past and future lost retirement benefits, reimbursement for other consequential damages, compensatory damages, and punitive damages. (Id. at 7; Restmt. at 11–12).

---

[2] Waheed has not clearly articulated his claims and so has not differentiated them as separate counts. The Court does so here for clarity.

The Court received Waheed's $400 filing fee on July 27, 2020. Waheed's non-indigent status meant that he was obligated to effect service on Defendants. On January 20, 2021, the Court issued an Order notifying Waheed that he had failed to present summonses for Defendants to the clerk for signature and seal, as required by Federal Rule of Civil Procedure 4(b). (ECF No. 5). As a result, he had also failed to comply with Federal Rules of Civil Procedure 4(e) and 4(j), Local Rule 103.8(a) (D.Md. 2021), and the Maryland Rules of Civil Procedure governing process on state agencies and officials. In its January 20, 2021 Order, the Court provided Waheed twenty-one days to submit summonses to the Court in compliance with the Rules.

On February 3, 2021, the Court received six partially completed summonses from Waheed. (ECF No. 6). Waheed failed, however, to include his address where indicated on the summons form. The Court issued another Order on February 5, 2021, directing Waheed to submit properly completed summonses to the Court in compliance with the Local Rules and the Federal Rules of Civil Procedure. (ECF No. 7).

On February 17, 2021, Waheed filed a Response to this Court's Order enclosing six partially completed summonses. (ECF No. 8). Once again, however, Waheed failed to include his address in the area indicated on the summons form. The Court thus issued another Order on February 25, 2021, providing specific directions regarding the manner in which Waheed should complete his summons forms. (ECF No. 9). Following that Order, Waheed submitted completed summons forms and the Clerk issued on March 15, 2021. (ECF No. 10). Waheed filed proof of service on Defendants on April 13, 2021. (ECF No. 11).

On April 16, 2021, MSRA filed a Motion to Dismiss. (ECF No. 12). On April 23, 2021, the remaining Defendants jointly filed a Motion to Dismiss. (ECF No. 14). Waheed filed Oppositions to both Motions on May 3, 2021. (ECF Nos. 17, 18). MSRA filed a Reply on May 12, 2021, (ECF No. 19), and the remaining Defendants filed a Reply on May 20, 2021, (ECF No. 20).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

Defendants move to dismiss Waheed's claim pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6). Here, because the Court finds that it lacks subject-matter jurisdiction pursuant to Rule 12(b)(1), it will dismiss the Amended Complaint on that basis and need not analyze Defendants' arguments under Rules 12(b)(5) and (6). <u>See Cunningham v. Gen. Dynamics Info. Tech., Inc.</u>, 888 F.3d 640, 649 (4th Cir. 2018) ("Sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."); <u>Fulcrum Int'l, Inc. v. Prince George Ctr. I, Inc.</u>, 503 F.App'x 193, 194 (4th Cir. 2012) ("Assertions of governmental immunity are properly addressed under Fed.R.Civ.P. 12(b)(1), which permits the assertion of the defense of lack of jurisdiction over the subject matter of a claim for relief.").

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from

the United States Constitution. Fed.R.Civ.P. 12(b)(1). To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). However, when a party challenges subject-matter jurisdiction, the Court may consider "evidence outside the pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (internal citation omitted).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject-matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on

the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768 (citing Adams, 697 F.2d at 1219). Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

The Court may determine on its own initiative that it lacks subject-matter jurisdiction, regardless of whether a party to the case has raised this claim. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); see also Fed.R.Civ.P. 12(h)(3). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Arbaugh, 546 U.S. at 506 (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). The Court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Id. at 502, 514. When the Court establishes that it does not have subject-matter jurisdiction, it "must dismiss the complaint in its entirety." Id.

**B.**   <u>**Analysis**</u>

**1.**   **Eleventh Amendment Immunity**

Although Defendants submit two Motions, their arguments are sufficiently similar that the Court need not analyze them separately. Defendants first argue that they are entitled to Eleventh Amendment Immunity. "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984). Defendants in this case may be split into three categories: (1) the State of Maryland; (2) MSRA, WCC, OAH, and the Comptroller; (the "Putative Agencies"); and (3) Judge Defendants. The Court will analyze these three groups in turn.

**a.**   **The State of Maryland**

The State of Maryland enjoys Eleventh Amendment immunity to suit unless it has consented to the suit or Congress has abrogated its immunity for the claim at issue. <u>Pennhurst</u>, 465 U.S. at 99. Neither exception applies here. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States."); <u>Bd. of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 374 (2001) (holding that Congress lacked authority to abrogate states' Eleventh Amendment immunity for claims asserted under the ADA); <u>MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n</u>, 487 F.Supp.3d 364, 373 (D.Md. 2020) ("[W]hile the Maryland Tort Claims Act, Md. Code Ann., State Gov't § 12-101, <u>et seq.</u>, effectuates a limited waiver of sovereign immunity to actions brought in state court, it has no effect on the immunity afforded by the Eleventh Amendment for suits in federal

courts." (internal quotation marks omitted)); State v. Sharafeldin, 854 A.2d 1208, 1219 (Md. 2004) (finding that the Maryland Legislature did not "waive the State's Eleventh Amendment immunity in [contract] actions in Federal court").[3] The State of Maryland thus enjoys immunity under the Eleventh Amendment to all the claims Waheed asserts in the Amended Complaint. For this reason, Waheed's claims against the State of Maryland will be dismissed.

### b.    The Putative Agencies

The Eleventh Amendment immunity Maryland enjoys with respect to Waheed's claims extends to "its agencies or departments," Pennhurst, 465 U.S. at 100, i.e., to "arms of the State." Northern Ins. v. Chatham Cnty., 547 U.S. 189, 193 (2006). The Court must therefore determine whether the Putative Agencies are arms of the State. To determine whether an entity is a state agent or instrumentality, and therefore is entitled to Eleventh Amendment immunity, courts in the Fourth Circuit apply an "arm-of-the-State analysis." See Owens v. Balt. City State's Att'ys' Off., 767 F.3d 379, 395 n.5 (4th Cir. 2014). This analysis examines four nonexclusive factors: (1) "whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State"; (2) "the degree of autonomy

---

[3] Neither Congress nor the State of Maryland could have abrogated their immunity from suit with respect to 18 U.S.C. § 1346 because it is a criminal statute that does not create a private right of action. See Smith v. Spears, No. CV 2:17-3384-PMD-BM, 2018 WL 4523201, at *4 (D.S.C. Feb. 8, 2018) (finding that "courts considering civil actions invoking 18 U.S.C. §§ 1346 and 1347 have found that these statutes also do not provide a private cause of action" and citing cases (footnotes omitted)), report and recommendation adopted, No. 2:17-CV-3384-PMD-BM, 2018 WL 2772668 (D.S.C. June 11, 2018).

exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions"; (3) "whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns"; and (4) "how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State." U.S. ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 580 (4th Cir. 2012) (quoting S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008)). In Owens, the Fourth Circuit explained that although the Supreme Court had previously held that the first factor was most important, it has since "abandoned this view." 767 F.3d at 395 n.5. Accordingly, the Court "must also consider at least three other factors—the degree of autonomy exercised by an entity, whether an entity is involved with state concerns, and how an entity is treated under state law—without giving preeminence to any single factor." Id. Applying these factors, the Court will analyze each Putative Agency Defendant in turn.

### i.     MSRA

The factors set forth above support a finding that MSRA is an arm of the state. The MSRA was created by state statute as an agency of the Board of the Maryland State Retirement and Pension System ("MSRPS"). See Md. Code Ann., State Pers. & Pens. ("SPP") §§ 21-101 (establishing MSRPS); 21-103 (establishing MSRPS's Board); 21-117 (establishing MSRA as "an agency of the Board"). MSRPS was created to serve the function of providing retirement benefits to eligible state workers. Id. § 21-101. The statute sets forth MSRPS's functions and duties and the composition of MSRPS's Board. Id. § 21-

11

104. The responsibility for managing and overseeing the several systems within MSRPS is vested in the Board. Id. §§ 21-102 (identifying the several retirement and pension systems within MSRPS); 21-108(a) (vesting authority in the Board). The Governor appoints several members of the Board, and its membership includes the State Treasurer, the Secretary of Budget and Management, and the Comptroller. Id. § 21-104. The State Treasurer serves as custodian of MSRPS's assets. Id. § 21-124. MSRA is an agency of the Board required to carry out the administrative duties of the several systems. Id. §§ 21-117(b), 21-119. MSRA employees are state employees. Id. § 21-118(c). MSRPS and MSRA are subject to the Maryland Administrative Procedure Act. Id. § 21-111(b); State Ret. & Pension Sys. v. Thompson, 792 A.2d 277 (Md. 2002). There is no indication in the MSRA's charge that it is involved with non-state concerns. For these reasons, the second, third, and fourth Oberg factors weigh heavily in favor of concluding that MSRA is an arm of the state.

With regard to the first factor, it is not clear to the Court whether a judgment against MSRA would be paid from the state treasury. However, it is clear that MSRPS, and through it the MSRA, receives state funding and that the State guarantees payment of MSRPS pension obligations. SPP §§ 21-302, 21-304, 21-308. Accordingly, the finances of MSRA and the State are closely intertwined, and it is likely that a judgment against MSRA would impact the state treasury. Similar considerations led another court in this circuit to repeatedly conclude that an analogous West Virginia agency was an arm of the state. See W. Va. Inv. Mgmt. Bd. v. Residential Accredited Loans, Inc., No. 2:10-CV-00461, 2010 WL 3418314, at *5 (S.D.W.Va. Aug. 26, 2010); W. Va. Inv. Mgmt. Bd. v. Variable Annuity Life Ins., No. 2:09-CV-01335, 2010 WL 2944847, at *8 (S.D.W.Va. July 26,

2010). Finally, Waheed does not meaningfully contest MSRA's argument that it is an arm of the state. (See generally Pl.'s Resp. MSRA's Mot. Dismiss ["Opp'n to MSRA"] at 3–9, ECF No. 17). This Court has consistently held that by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim. See O'Reilly v. Tsottles, No. GLR-18-3622, 2021 WL 424415, at *7 (D.Md. Feb. 8, 2021) (citing cases).

For all these reasons, the Court concludes that MSRA is an arm of the state. Because MSRA is an arm of the state of Maryland, it is entitled to Eleventh Amendment immunity from Waheed's claims for the reasons set forth in Section II.B.1.a, supra. Accordingly, those claims will be dismissed.

### ii.    WCC

WCC is also entitled to Eleventh Amendment immunity as an arm of the state. Like the MSRA, WCC was established via statute passed by the Maryland General Assembly. Md. Code Ann., Lab. & Empl. ("L&E") § 9-301. The statute outlines the membership, chair, and staffing of WCC, and even the location of its offices. Id. §§ 9-302, 303, 305, 306. The statute further states that the staff of WCC are "in the State Personnel Management System" and should be employed "in accordance with the State budget." Id. § 9-305(a). There is no indication in WCC's charge that it is involved with non-state concerns. For these reasons, the second, third, and fourth Oberg factors weigh heavily in favor of concluding that WCC is an arm of the state. Moreover, the statute creating the WCC makes clear that "the State shall pay the salaries, administrative expenses, and all other expenses of the Commission." Id. § 9-316(b) (emphasis added). Accordingly, the

first Oberg factor also suggests WCC is an arm of the state. In sum, the four Oberg factors weigh strongly in favor of determining that WCC is an arm of the state.

Other federal courts conducting arm-of-the-state analyses of state workers' compensation commissions in their states—including at least one court in this circuit—have similarly found that those analogous entities were arms of the state. See, e.g., Williams v. S.C. Workers' Comp. Comm'n, No. 4:18-CV-00952-RBH-KDW, 2018 WL 4055627, at *1 (D.S.C. May 30, 2018), report and recommendation adopted, No. 4:18-CV-00952-RBH, 2018 WL 4052532 (D.S.C. Aug. 24, 2018); Andrews v. Okla. Workers' Comp. Comm'n, No. CIV-21-609-R, 2021 WL 4699075, at *3 (W.D.Okla. Oct. 7, 2021); Ogundipe v. Texas Workers' Comp. Comm'n, No. 3:03-CV-0784-K, 2003 WL 21145580, at *1 (N.D.Tex. Apr. 24, 2003), report and recommendation adopted, No. 3-03-CV-784-K, 2003 WL 21488152 (N.D.Tex. May 14, 2003). The Court of Special Appeals of Maryland has also implied that WCC is an "agency or instrumentality" of the State. State, Cent. Collection Unit v. DLD Assocs. Ltd. P'ship, 685 A.2d 873, 876 (1996) (referring to L&E § 9-301 as a statute designed "to express the desire of the Legislature to have an agency or instrumentality act independently of other units of government"). Finally, Waheed does not meaningfully contest Defendants' argument that WCC is an arm of the state. (See generally Pl.'s Resp. Defs.' Mot. Dismiss ["Opp'n to Remaining Defs."] at 4–12, ECF No. 18). Because WCC's status as an arm of the state is dispositive, and because Waheed failed to contest that status, Waheed has abandoned his claims against WCC. See O'Reilly, 2021 WL 424415, at *7 (citing cases).

For all these reasons, the Court concludes that WCC is an arm of the state. Because WCC is an arm of the state of Maryland, it is entitled to Eleventh Amendment immunity from Waheed's claims for the reasons set forth in Section II.B.1.a, supra. Accordingly, Waheed's claims against WCC will be dismissed.

### iii.     OAH

The OAH is also an arm of the state of Maryland. The Maryland General Assembly created OAH as an "independent unit in the Executive Branch of State government," Md. Code Ann., State Gov't § 9-1602, and funded it through the state budget, id. § 9-1603. The OAH conducts hearings pursuant to the Maryland Administrative Procedure Act for various state and local agencies by statutory or written delegation. Id. § 10-201 et seq. There is no indication in OAH's charge that it is involved with non-state concerns. For these reasons, the second, third, and fourth Oberg factors weigh in favor of concluding that OAH is an arm of the state. Neither party provides information concerning whether a judgment against OAH would be paid from the state treasury. Accordingly, the first Oberg factor is neutral. In sum, the four Oberg factors weigh in favor of determining that OAH is an arm of the state.

Other federal courts conducting arm-of-the-state analyses of state offices of administrative hearings in their states have similarly found that those analogous entities were arms of the state. See, e.g., Gonino v. State, No. A-14-CV-270 LY, 2014 WL 11332300, at *3 (W.D.Tex. Sept. 15, 2014); Coaxum v. Washington, No. C10-1815-MAT, 2012 WL 1034231, at *6 (W.D.Wash. Mar. 26, 2012). In addition, Waheed does not meaningfully contest Defendants' argument that OAH is an arm of the state. (See generally

Opp'n to Remaining Defs. at 4–12). Because OAH's status as an arm of the state is dispositive, and because Waheed failed to contest that status, Waheed has abandoned his claims against OAH. See O'Reilly, 2021 WL 424415, at *7 (citing cases).

For all these reasons, the Court concludes that OAH is an arm of the state. Because WCC is an arm of the state of Maryland, it is entitled to Eleventh Amendment immunity from Waheed's claims for the reasons set forth in Section II.B.1.a, supra. Accordingly, Waheed's claims against OAH will be dismissed.

### iv.    Comptroller[4]

This Court has repeatedly held that the Comptroller is an arm of the state entitled to Eleventh Amendment immunity. See Kuypers v. Comptroller of Treasury of State of Md., 173 F.Supp.2d 393, 396 (D.Md.), aff'd, 21 F.App'x 161 (4th Cir. 2001); Buchanan v. Maryland, No. RDB-16-2550, 2017 WL 412525, at *4 (D.Md. Jan. 31, 2017); O'Hara v. Comptroller of Maryland, No. TDC-14-4044, 2016 WL 2760337, at *3 (D.Md. May 12, 2016), aff'd, 670 F.App'x 777 (4th Cir. 2016). The Court sees no reason to disturb those findings here. In addition, Waheed does not meaningfully contest Defendants' argument that the Comptroller is an arm of the state. (See generally Opp'n to Remaining Defs. at 4–12). Because the Comptroller's status as an arm of the state is dispositive, and because Waheed failed to contest that status, Waheed has abandoned his claims against the

---

[4] It appears to this Court that the Amended Complaint intends to name the Office of the Comptroller as a Defendant, as distinct from Peter Franchot, the individual currently serving as Maryland Comptroller. (See Am. Compl. at 2, 6; Restmt. at 1). Even if Waheed intended to sue Franchot, that claim would be subject to dismissal as he has not identified any actions by Franchot as an individual, and, for reasons set forth in Section II.B.1.c, infra, state officers sued in their official capacity are entitled to Eleventh Amendment immunity.

Comptroller. See O'Reilly, 2021 WL 424415, at *7 (citing cases). Accordingly, Waheed's claims against the Comptroller will be dismissed.

### c.   Judge Defendants

Judge Defendants argue, inter alia, that Waheed's claims against them in their official capacities are barred by the Eleventh Amendment. See Just Puppies, Inc. v. Frosh, 438 F.Supp.3d 448, 482 (D.Md. 2020) ("State officers sued in their official capacity are also entitled to Eleventh Amendment immunity because such a suit 'is not a suit against the official but rather is a suit against the official's office.'") (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989)). The Court agrees. As set forth above, the OAH is an arm of the state. As OAH officials, Judge Defendants are state officers. They are therefore entitled to Eleventh Amendment immunity. Accordingly, Waheed's claims against Judge Defendants in their official capacities must be dismissed.

### 2.   State Sovereign Immunity

Even if the Putative Agencies' Eleventh Amendment argument lacked merit, Waheed's claims against them would nevertheless be barred under the doctrine of state sovereign immunity. State sovereign immunity "is a broad[] doctrine that 'bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.'" Williams v. Morgan State Univ., 850 F.App'x 172, 174 (4th Cir. 2021) (quoting Passaro v. Virginia, 935 F.3d 243, 247 (4th Cir. 2019)). "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." Id. (quoting Alden v. Maine, 527 U.S. 706, 713 (1999)).

Courts in Maryland apply a two-part test to determine whether sovereign immunity applies in a specific case: "(1) whether the entity asserting immunity qualifies for its protection; and, if so, (2) whether the legislature has waived immunity, either directly or by necessary implication, in a manner that would render the defense of immunity unavailable." Stern v. Bd. of Regents, Univ. Sys. of Md., 846 A.2d 996, 1001 (Md. 2004) (quoting ARA Health Servs. Inc. v. Dep't of Pub. Safety & Corr. Servs., 685 A.2d 435, 438 (Md. 1996)). As set forth above, there is no question that Defendants are arms of the state generally protected by sovereign immunity.

Thus, the Court must decide whether the Maryland legislature has waived immunity by enacting the Maryland Tort Claims Act, Md. Code Ann., State Gov't ("S.G.") § 12-101 et seq. ("MTCA"). "[T]he question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 249 (4th Cir. 2012) (quoting Palmer v. Ohio, 248 U.S. 32, 34 (1918)). The Court of Appeals of Maryland has held that no suit can be maintained against the State "unless the General Assembly has specifically waived the doctrine" of sovereign immunity. Stern, 846 A.2d at 1001. Maryland courts "have strictly construed such waivers in favor of the sovereign." Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert, 973 A.2d 233, 240 (Md. 2009). Thus, courts read statutory waiver language "narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat." Stern, 846 A.2d at 1012–13.

The MTCA states that subject to certain exceptions not at issue here, "the immunity of the State and of its units is waived as to a tort action, in a court of the State[.]" S.G. § 12-104(a)(1). Thus, the MTCA's waiver of sovereign immunity "is limited to suits in a court of the State" and does not extend to suits brought in this Court. Est. of Leysath v. Maryland, No. GJH-17-1362, 2018 WL 1225087, at *4 (D.Md. Mar. 6, 2018) (internal quotation marks omitted); see also Okusami v. Md. Dep't of Health & Mental Hygiene, No. ELH-18-1701, 2019 WL 1003607, at *13 (D.Md. Feb. 28, 2019) (finding that MTCA waiver was "inapplicable because it applies only to actions in State court").

It is true that "[a]ny sovereign immunity that defendants may claim in Maryland state court travel[] with them to federal court." Robinson v. Pytlewski, No. PX-19-1025, 2020 WL 607030, at *9 n.4 (D.Md. Feb. 7, 2020) (internal quotation marks omitted); see also Stewart v. North Carolina, 393 F.3d 484, 490 (4th Cir. 2005) (finding that a state "did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question"). But this is not a removal action; Waheed voluntarily filed his claim in this Court. Accordingly, the MTCA's waiver of sovereign immunity does not apply to this suit. As such, the doctrine of state sovereign immunity bars Waheed's claims. For this reason, too, the Amended Complaint must be dismissed as to the State of Maryland and the Putative Agencies.

### 3.   Judicial Immunity

As set forth above, Judge Defendants are entitled to Eleventh Amendment immunity for claims against them in their official capacity. To the extent Waheed seeks to sue Judge Defendants in their individual capacity, those claims must also fail under the doctrine of

judicial immunity. Judicial immunity shields judges from liability for damages for "acts committed within their judicial jurisdiction." <u>Imbler v. Patchman</u>, 424 U.S. 409, 418 (1976); <u>see also</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 9 (1991) ("[G]enerally, a judge is immune from a suit for money damages."); <u>Butz v. Economou</u>, 438 U.S. 478, 511–14 (1978) (clarifying that judicial immunity extends to administrative law judges).

This Court has repeatedly found that claims against state administrative law judges are subject to judicial immunity. <u>See, e.g.</u>, <u>Dixon v. Cole</u>, No. TDC-16-3922, 2018 WL 922355, at *3 (D.Md. Feb. 15, 2018) ("Judicial immunity applies fully to administrative law judges when they are acting in a judicial capacity, such as presiding over adversarial proceedings and making decisions on issues of fact and law."); <u>Brightwell v. Hershberger</u>, No. DKC-11-3278, 2013 WL 709784 at *4 (D.Md. Feb. 26, 2013) ("Administrative law judges are entitled to immunity so long as they perform functions similar to judges and prosecutors in a setting like that of a court."). Here, although the Amended Complaint provides limited insight into the specific actions of Judge Defendants, it is clear that Judge Defendants presided over a personnel appeal taken by Waheed following one or more adverse employment actions against him, including his termination. It is also clear by implication that Judge Defendants performed functions typical to those of a judge—taking evidence, including testimony, and rendering a decision. Indeed, Waheed specifically refers to Judges Richardson and Murray making a credibility determination regarding his testimony and to Judge Klauber resolving a motion. The Court thus finds that OAH administrative law judges, including Judge Defendants, are generally entitled to judicial immunity.

There are two exceptions to judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Mireles, 502 U.S. at 11. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 11–12. None of Waheed's allegations suggest that Judge Defendants' actions were taken outside of their judicial capacity or in the absence of jurisdiction. (See generally Restmt. at 2–3; Am. Compl. at 6). Indeed, it appears clear that Judge Defendants acted within their jurisdiction. See SPP § 11-110 (employee appealing disciplinary action may be referred to OAH for hearing and disposition); § 12-205(c)(1)(i) (authorizing OAH to "dispose of the grievance or conduct a hearing on each grievance"). Waheed's claims against Judge Defendants are therefore subject to judicial immunity. Accordingly, those claims will be dismissed.[5]

---

[5] The Court notes that even if Defendants were not immune to Waheed's claims for the reasons set forth in Sections II.B.1–3, supra, those claims would be subject to dismissal for the following additional reasons set forth in Defendants' Motions: Waheed failed to exhaust his administrative remedies (see MSRA Mem. Supp. Mot. Dismiss ["MSRA Mot."] at 13–19, ECF No. 12-1; Defs.' Mem. Supp. Mot. Dismiss ["Remaining Defs.' Mot."] at 19–23, ECF No. 14-1); Waheed failed to state a claim under 42 U.S.C. § 1983 (see MSRA Mot. at 19–20; Remaining Defs.' Mot. at 21–23); Waheed failed to state a claim for discrimination (see Remaining Defs.' Mot. at 23–26); and Waheed failed to properly serve Defendants (see MSRA Mot. at 21–25; Remaining Defs.' Mot. at 26–28). The Court finds Defendants' arguments supporting dismissal on these grounds persuasive and adopts them by reference.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion (ECF Nos. 12,

14). A separate Order follows.

Entered this 22nd day of October, 2021.

_____/s/_____
George L. Russell, III
United States District Judge